IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YAIDA O. FORD )<br>c/o FLP PC )<br>1001 L Street, SE )<br>Washington, D.C. 20003 )<br>   )<br>   Plaintiff, )<br>   )<br>   v. )<br>   )<br>SPECIALIZED LOAN SERVICING, LLC. )<br>Serve: United Agent Group Inc. )<br>1619 K Street, NW )<br>Ste. 300 )<br>Washington, D.C. 20005 )<br>   )<br>   Defendant. )<br>   ) | Civil Action No: |

## COMPLAINT

Plaintiffs Ford Law Pros P.C. and Yaida O. Ford, through the undersigned counsel, and pursuant to this Court's Standing Order submits this Amended Complaint against Defendant Specialized Loan Servicing, LLC ("SLS").

### I.   INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. which prohibits debt collectors from engaging in abusive, deceptive and unfair acts and practices; violations of the Fair Credit Reporting Act (FCRA) and the DC Consumer Protection and Procedures Act (DCPPA), and related common law claims.

1

2. This is an action for damages and injunctive relief under 15 U.S.C. § 1681o(a)(1), 15 U.S.C. § 1681n(a)(1)(A) and 15 U.S.C. § 1692k.

## II.    PARTIES

3. Plaintiff Yaida O. Ford is a resident of the District of Columbia.

4. Defendant Specialized Loan Servicing, LLC (SLS) is a national loan servicer that services mortgage loans that are related to properties within the District of Columbia. Defendant is the subject of a recent class action lawsuit filed in EDNY for FDCPA violations.[1]

5. Defendant has been the servicer of Ms. Ford's loan at all relevant times referenced in this Complaint.

## III.    JURISDICTION

6. This Court has federal question jurisdiction pursuant to the FDCPA, 15 USC 1692e(2)(a), the FCRA, 15 U.S.C. 1681s-2(a)(7)(A)(i), et. seq., and 28 U.S.C. § 1331 and supplemental jurisdiction exists over the DCCPA claim and common law claims.

7. .This Court has personal jurisdiction over SLS under D.C. Code § 13-423 because SLS conducts business in the District of Columbia and all events giving rise to this Complaint took place in the District of Columbia.

## IV.    FACTS

---

[1] Forbes vs. SLS, Case No. 18-cv-06561 (EDNY).

8. Yaida Ford has been the sole owner-occupant at 1907 Good Hope Rd, SE #305, Washington D.C. 2002 since 2005.

9. Defendant became her servicer effective February 2019 via way of a loan transfer.

10. The condo was purchased with first and second deed of trust.

11. The original amount of the second deed of trust was $17,700. The original note holder was Bank of America, NA.

12. Ms. Ford's payments were $132.98 each month on the second note. She paid an additional $67.02 each month to pay down the note.

13. Upon notice of transfer from Defendant, Ms. Ford's remaining balance of the second deed of trust was $4,292.39.

14. Defendant sent Ms. Ford a Notice of service transfer dated February 4, 2019 but it did not have a recorded interest in the property until November 8, 2021 after Ms. Ford sent a Notice of Intent to Sue Defendant on October 31, 2021 alleging the violations of federal law that are contained herein.

15. Upon transfer of the loan to Defendant, Defendant failed to send Ms. Ford account statements every month indicating that she could pay the amount due in periodic monthly installments.

16. Ms. Ford contacted SLS to find out more about the loan. She was informed that the amount due was $4,292.39. She was not informed that she could pay monthly periodic installments under the same terms and obligations as she had with Bank of America.

17. To be sure, she never had an online account and never received monthly account statements from Defendant.

18. Relying on Defendant's communications with her, she understood that there was no monthly period installment payment available to her and that she had to pay all or late fees and interest would continue to accrue on the balance.

19. Based on Defendant's representations, Plaintiff requested a hardship application from Defendant that would begin the loss mitigation process and assist her with a payment plan or a ceasing of late fees and interest while she attempted to pay it down.

20. On or about June 15, 2020, Ms. Ford ultimately requested a hardship application to Defendant and send them documentation of her financial losses to request some relief. She did this because Defendant failed to inform her that she could pay monthly periodic statements from the time of their transfer of the loan to the time that it came to term on July 1, 2020.

21. Had Defendant properly informed her that she could pay off the loan by monthly period installments, she would not have needed to request a hardship application.

22. To be sure, she'd successfully paid Bank of America the monthly installment amount without fail for 14 years.

23. At no point in time, did Defendant notify Ms. Ford that it was going to report her failure to pay to the three major credit reporting agencies within the statutory timeframe provided by the FCRA which states that a consumer must be notified

prior to a creditor reporting them or within 30 days after the first instance of reporting. Defendant failed to do this.

24. Moreover, Defendant created the circumstances that lead to the default that it reported to the three major credit reporting bureaus by failing to correctly send her monthly account statements reflecting the amount of her monthly installment payments of $132.98.

25. Upon receiving notice of her hardship application, Defendant denied the application.

26. Even after Defendant denied the application, it did not send her any documentation indicating that she'd missed more than one year's worth of installment payments. But there is more.

27. Had Ms. Ford missed 16 months of payments, even less frankly, Defendant should have sent her a default notice along with several foreclosure communications. It did not.

28. Had Ms. Ford missed that many payments, Defendant could have foreclosed on her, but it did not, because it could not as it did not have a recorded interest in her property until November 8, 2021 and by that time, the past due balance was paid in full.

29. Although Defendant did not send her monthly statements, it reported to all three credit agencies that she failed to make mortgage payments of $132.98 on an installment basis (as all mortgages are characterized by a credit reporting agency).

30. Defendant reported this information without providing Ms. Ford any statutorily required notice under the FCRA.

31. Consequently, Ms. Ford's most recent mortgage loan application was rejected on October 29, 2021 due to Defendant's reporting making it appear as though her home was in foreclosure. **Ex. D**

32. Ms. Ford's home is not in foreclosure and has never been in foreclosure or even pre-foreclosure status.

33. Ms. Ford has never received any Notice of Foreclosure from Defendant or any complaint filed against her in any court for that purpose.

34. On October 31, 2021, Ms. Ford contacted Defendant and explained that its actions violated federal and D.C. law and asked that Defendant correct the misinformation on her report.

35. Ms. Ford filed a dispute with all three credit reporting agencies the same day.

36. On November 1, 2021, she filed suit in small claims court against Defendant for violations of the FCRA.

37. On November 15, 2021 Defendant sent her correspondence that included fictitious monthly account statements dating back to March 2019. **Ex. E.** The packet consisted of 95 documents, many of which were account statements.

38. The correspondence from Defendant also included an Assignment of Transfer dated November 8, 2021, reflecting that SLS is now the servicer. Interestingly, the date of this assignment is approximately 7 days after Plaintiff filed her suit indicating that SLS did

not have a recorded interest in the property. The actual transfer took place back in February 2019.

39. Ms. Ford received the fictitious account statements on November 22, 2021.

40. Ms. Ford phoned Defendant on November 23, 2021 to ask for a copy of all correspondence that Defendant sent to her related to her account from the date of and including Notice of Servicing Transfer to the present.

41. As suspected, the correspondence that comprised her actual file, included eight documents, one of which appeared to be a monthly statement from March 2019—one month after Defendant became the servicer for Ms. Ford's loan.

42. The account statement that was sent to her via email was never mailed to Ms. Ford at any time during Defendant's tenure as her loan servicer.

43. Defendant's actions, in creating fictitious account statements, were fraudulent with the intent to deceive Ms. Ford, the court and the credit reporting agencies that it did not violate the FCRA.

44. These facts, when considered with the fact that Ms. Ford applied for a hardship exemption back in 2020, that her payment history is nearly perfect, and that her home is not and never has been in foreclosure, make it highly unlikely that she had actually received monthly bills for $132.98.

45. Based on Ms. Ford's nearly payment history with Bank of America, had Defendant given her the option to pay the balance in monthly periodic installments, interest, late fees and penalties would not have accrued because she would have been able to

continue making the same payments she made when Bank of America was her servicer.

46. What actually happened is this—Defendant, a large mortgage servicer, whose been the subject of a recent class action suit filed on November 17, 2018 for FDCPA violations—received notice of Ms. Ford's claims, quickly reported to the credit bureaus that her account was "paid as agreed" but failed to remove the negative reporting history that made her appear as though she had been in foreclosure.

47. Defendant also failed to notify Ms. Ford that it would report her to the credit reporting agencies if she did not pay, which is another violation of the FCRA:

    *"If any financial institution that extends credit…furnishes…to a consumer reporting agency negative information…regarding credit extended to a customer, <u>the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer</u>."* 15 U.S.C. 1681s-2(a)(7)(A)(i).

    As a matter of law, Defendant was required to inform Ms. Ford before or, no later than 30 days after, it furnished any negative information to the credit reporting bureaus. 15 U.S.C. 1681s-2(a)(7)(B)(i).  This, Defendant did not do.

48. Ms. Ford is seeking damages for violations of the FDCPA, FCRA and the DCCPA.

### COUNT I: VIOLATIONS OF FAIR CREDIT REPORTING ACT

49. Plaintiff incorporates herein, by reference, the allegations in the previous paragraphs as if fully set forth below.

50. Defendant became the servicer for Plaintiff' second deed of trust in February 2019.

51. Prior to this transfer, Plaintiff's monthly payments were $132.98 and plaintiff paid an extra $67.02 each month.

52. Defendant did not send Plaintiff monthly account statements as required by law showing her how much her new payments would be and when they were due.

53. Defendant did not provide Plaintiff with any notice that it would report her to the credit bureaus.

54. Despite Defendant's failure to send Plaintiff's monthly statements, it reported to the three main credit bureaus that she was late each month for more than one year—which is the equivalent to a foreclosure.

55. Plaintiff was denied a mortgage loan because of Defendant's actions.

56. Defendant violated 15 U.S.C. 1681s-2(a)(7)(A)(i) and 15 U.S.C. 1681s-2(a)(7)(B)(i).

## COUNT II: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

57. Plaintiff incorporates herein, by reference, the allegations in the previous paragraphs as if fully set forth below.

57. Defendant is a "debt collector" as defined under the FDCPA.

58. Under 15 USC 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59. Specifically, the FDCPA makes it illegal for a servicer to make a false representation regarding the "character, amount, or legal status of any debt." See 15 USC 1692e(2)(a).

9

60. Defendant falsely misrepresented that character of Plaintiff's debt by claiming that she failed to make monthly payments in the amount of $132.98.

61. Plaintiff's loan was not set up on a monthly installment or periodic payment basis, and even if it was, Defendant did not send Plaintiff regular monthly account statements, if any, for the amount of $132.98 or any other amount.

62. Defendant only represented to Plaintiff that she had to pay the balance of the second mortgage.

63. After Plaintiff sent a notice of intent to sue to Defendant and filed a statement of claim thereafter, Defendant created fictitious monthly statements and mailed them to Plaintiff as a part of a 95-paged packet dated November 15, 2021 in response to the litigation that Ms. Ford filed in small claims.

64. This was the first time Plaintiff saw any monthly statements from Defendant. Indeed, Defendant had never mailed any monthly statements to Plaintiff prior to November 15, 2021.

## COUNT III: FRAUD

65. Plaintiffs incorporate herein, by reference, the allegations in the previous paragraphs as if fully set forth below.

66. Defendant falsely misrepresented that character of Plaintiff's debt by claiming that she failed to make monthly payments in the amount of $132.98.

67. Plaintiff's loan was not set up on a monthly installment or periodic payment basis, and even if it was, Defendant did not send Plaintiff regular monthly account statements, if any, for the amount of $132.98 or any other amount.

68. Defendant only represented to Plaintiff that she had to pay the balance of the 2nd mortgage.

69. After Plaintiff sent a notice of intent to sue to Defendant and filed a statement of claim thereafter, Defendant created fictitious monthly statements and mailed them to Plaintiff as a part of a 95-paged packet dated November 15, 2021 in response to the litigation that Ms. Ford filed in small claims.

70. This was the first time Plaintiff saw any monthly statements from Defendant. Indeed, Defendant had never mailed any monthly statements to Plaintiff prior to November 15, 2021. It created the fake statements to cover up its violations of the Periodic Mortgage Statement Rule as codified in 12 CFR 1026.41(2).

71. These actions were undertaken by Defendant knowingly and with the intent to deceive.

72. Defendant's actions damaged Plaintiff in that it has attempted to justify the inaccurate information that it furnished to the three credit reporting bureaus.

73. As a result, Plaintiff's application for a home loan was denied.

### COUNT IV: VIOLATIONS OF DISTRICT OF COLUMBIA CONSUMER PROTECTION AND PROCEDURES ACT
### (D.C. Code §28-3904).

74. Plaintiff adopts and incorporates all previous paragraphs of this Complaint as if set forth fully below.

75. Defendant's fraudulent and deceptive conduct, as stated in Paragraphs 37-47, violates the D.C. Code § 28-3904(e) prohibits deceptive acts:

11

"It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to: (e) misrepresent as to a material fact which has a tendency to mislead...."

76. Defendant's knowingly, willingly and intentionally mischaracterized Plaintiff's debt as one for periodic installment payments to the credit bureaus while failing to send Plaintiff any monthly account statements that would permit her to pay the debt down on a monthly schedule as she had done before Defendant became her servicer.

77. Instead, Defendant sent Plaintiff notices that she owed the full amount leading her to believe that she had no other option but to pay the full amount or pay the amount plus interest, late fees, penalties and other fees.

78. Defendant's actions caused Plaintiff to apply for a hardship application when she did not have to.

79. Defendant's actions damaged Plaintiff's credit score to the point where she has been denied for a loan.

80. Defendant also failed to notify Plaintiff that it was reporting her to the three credit reporting bureaus.

WHEREFORE, for the reasons set forth above, Plaintiff prays that this Court enter an Order providing the following relief:

    A. Injunctive relief requiring Defendant to do whatever necessary to obtain a certificate of satisfaction; remediate damages by contacting all credit reporting agencies and doing whatever else is necessary to restore Plaintiffs credit rating and credit-worthiness with regards to all financial institutions and other companies with whom Plaintiffs conduct business.

B. Enter an award of actual damages for each month that Defendant misrepresented Plaintiff's payment status as late to the three credit reporting bureaus. These damages include interest, late fees and other charges.

C. Enter an award of compensatory damages up to the statutory amount of $1,000 for each month that Defendant misrepresented Plaintiff's payment status as late to the three credit reporting bureaus.

D. An award for punitive damages under all applicable statutes for Defendant's intentional and wrongful conduct that violated each Act where punitive damages are available.

E. Reasonable attorney's fees and costs as permitted under the FCRA, FDCPA and DCPPA.

F. The Plaintiff prays that this Court use all of its equitable power to grant her any and all relief that it deems just.

## V.  JURY DEMAND

Plaintiffs request a trial by jury.

Respectfully Submitted,

/s/Yaida O. Ford, Esq.

Yaida O. Ford (D.C. Bar #497013)
Ford Law Pros P.C.
1001 L Street, SE
Washington, D.C. 20003

Tel: 202-792-4946
Email: yford@fordlawpros.com
*Counsel for Plaintiff*